UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANTHONY R. McZEAL,

        Plaintiff,

   v.

CITY OF SEATTLE, et al.,

        Defendants.

No. C05-1965P

ORDER ON DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

       This matter comes before the Court on Defendants' motion for summary judgment. (Dkt. No. 45). Having reviewed the papers and pleadings submitted by the parties, the Court GRANTS in part and DENIES in part Defendants' motion.

       The Court GRANTS Defendants' motion to the extent it seeks dismissal of: (1) all claims against the five individual City employees named as defendants in Plaintiff's amended complaint; and (2) any racial harassment/hostile work environment claims asserted in the amended complaint. The Court DENIES Defendants' motion to the extent it seeks dismissal of Plaintiff's claim that he was terminated from his employment on October 19, 2004 in retaliation for engaging in activity protected by Title VII. To the extent that Plaintiff's opposition brief may be construed as raising claims that his later attempts to obtain work with the City were unlawfully denied, the Court finds that such claims

ORDER - 1

are not properly before the Court. Plaintiff's amended complaint did not provide fair notice of these additional claims. Absent a stipulation by the parties, Plaintiff will not be permitted to amend his complaint at this late stage of the proceedings to assert new claims.

The reasons for the Court's order are set forth below.

**Background**

Plaintiff Anthony McZeal, an African-American, worked as a temporary employee for the City of Seattle's Department of Transportation (SDOT) from August 23, 2004 to October 19, 2004. Plaintiff was hired to work in the SDOT Street Maintenance Division pursuant to a "temporary worker request" that sought four temporary employees from August 11, 2004 to October 11, 2004. The other temporary employees hired by SDOT were Toney Hicks, Bobby Laygo, and Tanielu Tunu. Plaintiff and Mr. Hicks were assigned to the "Asphalt Crack Sealing" program, while the other two employees were assigned to work elsewhere.

The four temporary employees began work on August 23, 2004. Plaintiff and Mr. Hicks worked under crew chief Jerry Sparkman, who is Caucasian. Melissa Marangon, a Caucasian women who is often referred to in the briefing as "Missy," was a permanent City worker assigned to this crew.

Ms. Marangon and Plaintiff had difficulties working together. In particular, Plaintiff asserts that he heard Ms. Marangon use the term "Driving Miss Daisy" when she saw Dave Haywood, an African-American co-worker, driving Mr. Sparkman. Defendants argue that Ms. Marangon made the "Driving Miss Daisy" comment only once in Plaintiff's presence, while Plaintiff claims that she made such comments several times. Ms. Marangon also allegedly made a number of negative comments about Plaintiff's work performance.

On September 21, 2004, Plaintiff spoke to Ms. Marangon and told her that she was "intimidating" the temporary workers. Following the conversation, Ms. Marangon complained to Jerry Sparkman about Plaintiff. Later in the day, Mr. McZeal complained to Mr. Sparkman about Ms.

ORDER - 2

1  Marangon. It is not clear whether Plaintiff mentioned Ms. Marangon's "Driving Miss Daisy"
2  comments at this meeting with Mr. Sparkman.
3        On September 22, 2004, Mr. Sparkman and Plaintiff met with Dick Stevenson, who was Mr.
4  Sparkman's supervisor. Mr. Stevenson acknowledges that Plaintiff raised the "Driving Miss Daisy"
5  comments at this meeting.   Plaintiff has also offered a document that Defendants produced during
6  discovery that contains handwritten notes regarding events that occurred on September 22nd. The
7  author of these notes is not entirely clear, although it appears they were written by a person named
8  "Bill." Bill Warmouth was a manager at SDOT and had some involvement regarding the dispute
9  between Plaintiff and Ms. Marangon. The notes are dated "9-22-04" and state, among other things:

> \*     Jerry Sparkman   9-22-04   Anthony McZeal  Tony Hicks  Temps. Compaints [sic] about Missy making racial slurs (Driving Miss Daisy) about Dave driving Jerry.
>
> \*     Jerry Sparkman came into my office (Bill's) 9-22-04 to report that the temporary laborers had made complaints about Missy. Racial slurs, and comments about the temporary laborers. (Racial slur in ref. to Dave Hayward driving Jerry) (Driving Miss Daisy Movie?)

14  (Dkt. No. 55 at 10) (Bates No. SDOT 0116).
15        Both sides have also introduced notes written by Plaintiff in which he describes his September
16  22nd meeting with Mr. Sparkman and Mr. Stevenson. (Dkt. No. 46, Ex. C; Dkt. No. 60). These
17  notes indicate that "I also told Dick Steveson [sic] the comment Missy maid [sic] that bother me was
18  the driving Miss Daisy issue. I had a serious problem with that and she knew it."
19        Following the September 22nd meeting, Ms. Marangon was moved to another crew. Bill
20  Effrig, a manager at SDOT, spoke to both Ms. Marangon and Mr. McZeal. Mr. Effrig states that he
21  "concluded that the situation was not serious and did not require any more remedial acts than those
22  already taken." (Dkt. No. 49 at 2). On September 30, 2004, Mr. Effrig sent an e-mail to Bill
23  Warmouth, whom he describes as "the manager over Dick Stevenson and Jerry Sparkman," that
24  discussed the situation. Ms. Marangon returned to the same crew as Plaintiff. In his deposition,
25

ORDER - 3

Plaintiff indicated that Ms. Marangon did not make any further "Driving Miss Daisy" comments or other racially insensitive remarks in his presence after returning to the crew.

However, Plaintiff asserts that after Ms. Marangon returned to the crew, she nearly hit him while driving a "roller," a large vehicle used to smooth out newly poured asphalt. When Plaintiff complained about this incident to Mr. Stevenson on October 19th, Plaintiff was told that he was being let go. Defendants maintain that on October 19th, Mr. Stevenson had been authorized by Jim Dare, the director of the SDOT Street Maintenance Division, "to lay off the two temporaries." (Dkt. No. 50 at 2). However, while Plaintiff was dismissed on October 19, 2004, it is undisputed that Toney Hicks, the other temporary employee on Plaintiff's crew, was not dismissed until October 28, 2004.

**Analysis**

1. <u>Summary Judgment Standards</u>

Rule 56(c) provides, in part, that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). While "some alleged factual dispute between the parties will not defeat" a motion for summary judgment, "disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). Additionally, "at the summary judgment stage the judge's function is not . . . to weigh the evidence . . . but to determine whether there is a genuine issue for trial." <u>Id.</u> at 249.

2. <u>Defendants' Requests to Strike Evidence</u>

Defendants have moved to strike certain evidence offered by Plaintiff in support of his opposition to the summary judgment motion. First, Defendants request that the Court strike an unsigned declaration by Toney Hicks, the other temporary worker on Plaintiff's crew. (Dkt. No. 59). The Court grants Defendants' request to strike this unsigned declaration. This declaration plainly does

ORDER - 4

1  not comply with the requirements of 28 U.S.C. § 1746, which provides, among other things, that a
2  declaration must be signed under penalty of perjury.

3  Defendants have also moved to strike a document that Plaintiff refers to as his "declaration."
4  (Dkt. No. 60). This "declaration" consists of six pages of handwritten notes that Plaintiff evidently
5  produced to Defendants during discovery. This "declaration" also does not comply with the
6  requirements of 28 U.S.C. § 1746. However, while Defendants are correct that Plaintiff has not
7  submitted a declaration in proper form, it should be noted that the same notes offered by Plaintiff as
8  his "declaration" were also offered into evidence by Defendants in support of their motion for
9  summary judgment. See Dkt. No. 46, Ex. C. Defendants indicated that the notes were a "true and
10 correct copy of excerpts from plaintiff's responses to Defendant City of Seattle's requests for
11 documents" and that "Plaintiff testified during his deposition that these documents were notes that he
12 took contemporaneously with his employment at the City of Seattle." (Dkt. No. 46 at 2). Although
13 Plaintiff's handwritten notes cannot be regarded as a proper declaration, the Court declines to strike
14 these notes from the record, given that Defendants offered them into evidence as well.

15 However, the Court cautions Plaintiff's counsel that his opposition to Defendant's summary
16 judgment motion has been flawed in multiple respects. Putting aside the obvious defects in the
17 "declarations" discussed above, Plaintiff filed his opposition brief and supporting materials in an
18 untimely manner, without any explanation for the delay. In addition, Plaintiff's opposition brief often
19 refers to evidence simply by citing the Bates numbers of particular documents, which the Court does
20 not have and therefore cannot consider.

21 3. <u>Claims Against Five Individual City Employees</u>

22 Plaintiff's amended complaint raises claims under Title VII of the Civil Rights Act of 1964.
23 Defendants argue that Plaintiff cannot maintain claims under Title VII against the five individual City
24 employees named in the complaint. As Defendants note, the Ninth Circuit has held that "individual
25 defendants cannot be held liable for damages under Title VII." <u>Miller v. Maxwell's Int'l, Inc.</u>, 991

ORDER - 5

F.2d 583, 587 (9th Cir. 1993); see also Holly D. v. Cal. Inst. of Tech., 339 F.3d 1158, 1179 (9th Cir. 2003) ("We have consistently held that Title VII does not provide a cause of action for damages against supervisors or fellow employees."). Plaintiff does not dispute this point. Therefore, all claims against Defendants Jerry Sparkman, Dick Stevenson, Bob Effrig, Jim Dare, and Melissa Marangon are dismissed.

4.  Claims Not Alleged In Amended Complaint

In his opposition to Defendants' motion, Plaintiff not only argues that his termination date was accelerated in retaliation for complaining about Ms. Marangon's comments, but also appears to allege that he was improperly denied other employment opportunities with the City after his termination. For example, Plaintiff argues in his opposition brief:

> SDOT managers and supervisors accelerated his termination date, refused to give accurate employment references to other City hiring agencies, and refused to consider him for City employment for which he was qualified because he complained to management about racial epitaphs [sic] and intimidations by a full-time permanent white female co-worker.

(Pl.'s Opp. at 5); see also id. at 3 (alleging that "derogatory references were communicated to other hiring agencies within the City" and "the City's Temporary Employment Service (TES) denied him reassignment because of his opposition to what he believed to be racially intimidating remarks and actions.")

Defendants object to Plaintiff's allegations that he was denied other employment opportunities with the City, noting that such claims were not raised in Plaintiffs' amended complaint, his original complaint, or his administrative charge to the EEOC. The Court agrees. In his amended complaint, Plaintiff's claim for retaliation is stated as follows: "Plaintiff further alleges that he was terminated in retaliation for his complaint of racial discrimination in violation of under [sic] § 704(a) of Title VII of the Civil Rights Act of 1964." (Amended Complaint at 3). As the Ninth Circuit has observed, "Federal Rule of Civil Procedure 8(a)(2) requires that the allegations in the complaint 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Pickern v.

ORDER - 6

Pier 1 Imports (U.S.), Inc., 457 F.3d 963, 968 (9th Cir. 2006). Here, Plaintiff's amended complaint does not provide fair notice of the new allegations raised in Plaintiff's opposition brief.

The Ninth Circuit has indicated that when a plaintiff raises new claims in opposing a summary judgment motion, the court may consider the additional claims as a motion to amend its pleadings. See In re New England Fish Co., 749 F.2d 1277, 1282 n.2 (9th Cir. 1984). "Amendments adding new claims are permissible under Rule 15, and may be considered 'during the pendency of a motion for summary judgment.'" Id. In such cases, the district court has discretion to grant leave to amend as justice requires, "with the most important consideration being whether the other parties were prejudiced by the amendment." Id.

In this case, Defendants would obviously be prejudiced if Plaintiff were permitted to add new claims at this late stage of the proceedings. To defend against Plaintiff's new claims, the City would have to present and rebut evidence regarding each time Plaintiff applied for a job with the City after his termination. Although Defendants have attempted to offer such evidence in their reply brief, they have not had a chance to conduct discovery on these issues or to file a summary judgment motion directed to such claims. The discovery and dispositive motions deadlines in this case have already passed, as well as the deadline for amended pleadings. Accordingly, unless the parties stipulate otherwise, Plaintiff will not be permitted to amend his complaint to assert new claims that were not fairly alleged in his amended complaint.[1] See, e.g., Solomon v. North American Life & Cas. Ins. Co., 151 F.3d 1132, 1139 (9th Cir. 1998) (upholding district court's denial of leave to amend complaint on the eve of discovery deadline).

---

[1] Because the Court finds that Plaintiff's additional claims were not fairly presented in his amended complaint and that he should not be granted leave to amend his complaint to add such claims at this late stage of the proceedings, it is not necessary to determine whether Plaintiff exhausted administrative remedies for such claims.

ORDER - 7

5. <u>Racial Harassment Claim</u>

In his amended complaint, Plaintiff appears to allege that he was subjected to racial harassment by Ms. Marangon. He alleges that the City "knew about the harassing behavior to African Americans and other minorities exhibited by Missy as a City employee and did nothing to stop the harassment" and that "Plaintiff asserts that such harassment is in violation of Title VII." (Amended Complaint at 3). In his opposition brief, however, Plaintiff states:

> While the Plaintiff maintains that the City of Seattle allowed and nurtured an environment, which perpetuated racially discriminatory practices (hostile work environment), Mr. McZeal's cause of action is directed at the City's use of retaliatory practices after Mr. McZeal reported what he perceived as racially derogatory remarks.

(Pl.'s Opp. at 2). As a result, it does not appear that Plaintiff intends to pursue a hostile work environment claim based on racial harassment, notwithstanding the allegations of racial harassment in his complaint.

Even if Plaintiff intended to pursue hostile work environment claims based on racial harassment, Plaintiff has not offered sufficient evidence to avoid summary judgment on such claims. To prevail on a hostile workplace claim premised on race, Plaintiff must show: (1) that he was subjected to verbal or physical conduct of a racial nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive environment. <u>Vasquez v. County of Los Angeles</u>, 349 F.3d 634, 642 (9th Cir. 2003). Defendants argue that even if Ms. Marangon made "Driving Miss Daisy" comments several times in Plaintiff's presence, as Plaintiff alleges, such comments were not sufficient to create a racially hostile work environment. The Court agrees. To determine whether conduct was sufficiently severe or pervasive to violate Title VII, the Court must consider "all the circumstances, including the frequency of the discriminatory conduct, its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

ORDER - 8

employee's work performance." Id.  In this case, the "Driving Miss Daisy" comments were not so frequent or severe as to constitute a racially hostile work environment.

In addition, as Defendants notes, an employer may only be held liable for racial harassment by a co-worker if the employer is negligent. "If . . . the harasser is merely a co-worker, the plaintiff must prove that the employer was negligent, i.e. that the employer knew or should have known of the harassment but did not take adequate steps to address it." Swinton v. Potomac Corp., 270 F.3d 794, 803 (9th Cir. 2001).  At earliest, Plaintiff's evidence suggests that the City became aware Ms. Marangon's racially offensive remarks in the workplace when Plaintiff complained about the "Driving Miss Daisy" remarks in his September 22, 2004 meeting with Jerry Sparkman and Dick Stevenson. Following this meeting, the City removed Ms. Marangon from Plaintiff's crew and looked into the dispute.  After Ms. Marangon returned to the crew, it is undisputed that she made no further "Driving Miss Daisy" or other racially offensive comments in Plaintiff's presence.  As a result, Plaintiff's claims for racial harassment/hostile work environment will be dismissed.

6. <u>Retaliation Claim</u>

Finally, Plaintiff alleges that he was terminated on October 19, 2004 in retaliation for opposing engaging in protected activity under Title VII.  To make a prima facie case of retaliation, Plaintiff must offer evidence that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action. Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1065-66 (9th Cir. 2003).  If Plaintiff makes a prima facie case, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for the adverse employment action. Id. at 1066.  If Defendants articulate such a reason, Plaintiff bears the burden of demonstrating that the reason is merely a pretext for a discriminatory motive. Id.

ORDER - 9

A. <u>Prima Facie Case</u>

　　i.　<u>Protected Activity</u>

Defendants argue that Plaintiff cannot demonstrate that he engaged in activity protected under Title VII, maintaining that Plaintiff has presented no evidence from which a fact finder could infer that he articulated a complaint based on racial harassment. (Defs.' Reply at 7). However, viewing the evidence in the light most favorable to Plaintiff, the Court finds there is sufficient evidence in the record to raise a material issue of fact as to whether Plaintiff complained to his supervisors about racial harassment in the workplace. Plaintiff's handwritten notes – which were offered into evidence by both Defendants and by Plaintiff – indicate that he complained to Mr. Sparkman and Mr. Stevenson on September 22, 2004 about Ms. Marangon's "Driving Miss Daisy" remarks. In addition, during discovery Defendants produced a handwritten document (apparently drafted by SDOT manager Bill Warmouth) which states that Plaintiff complained on September 22, 2004 about "racial slurs" by Ms. Marangon.

Citing <u>Silver v. KCA, Inc.</u>, 586 F.2d 138 (9th Cir. 1978), Defendants appear to suggest that Plaintiff cannot maintain a retaliation claim under Title VII based on his complaints about Miss Marangon's "Driving Miss Daisy" comments. The plaintiff in <u>Silver</u> was a white female employee who was fired shortly after she confronted a co-worker who had used a racial slur in the workplace. The Ninth Circuit held that she could not maintain a retaliation claim under Title VII because the plaintiff was not opposing a racially discriminatory act of the employer, but was instead opposing a racially discriminatory act by a co-worker. The court held that "[e]ven if the discharge was entirely based on [plaintiff's] response to [her co-worker's] racial slur . . . . the defendant did not violate Title VII." <u>Id.</u> at 140-41.

However, since <u>Silver</u> was decided in 1978, the Ninth Circuit has clarified that a plaintiff "must only show that she had a 'reasonable belief' that the employment practice she protested was prohibited

ORDER - 10

under Title VII" to establish that she engaged in "protected activity."[2] <u>Trent v. Valley Elec. Ass'n, Inc.</u>, 41 F.3d 524, 526 (9th Cir. 1994). As a result, Plaintiff only must show that he had a reasonable belief that it was unlawful under Title VII for Ms. Marangon to make racially offensive remarks in the workplace; he does not need to demonstrate that Ms. Marangon's comments actually violated Title VII. <u>Id.</u> at 527. Viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff could have reasonably believed that Ms. Marangon's "Driving Miss Daisy" remarks were prohibited under Title VII.

        ii.    <u>Adverse Action</u>

There is no serious dispute that Plaintiff's termination constitutes an adverse employment action.

        iii.    <u>Causal Link</u>

Defendants argue that Plaintiff has "failed to produce evidence that there was any causal link between his conversation with his supervisors and any adverse employment decision." (Defs.' Reply at 8). Defendants also suggest that there is no evidence that Plaintiff was terminated "ten days early," as he has asserted.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that a reasonable fact-finder could infer a causal link between Plaintiff's termination on October 19th and his complaints about racially offensive remarks in the workplace. Plaintiff's notes, which both Defendants and Plaintiff offered into evidence, suggest that he had been told by Jerry Sparkman that his employment would last until October 29th. <u>See</u> Dkt. No. 46, Ex. C at 5 (indicating that on October 12th, Mr. Sparkman "quoted" Plaintiff a last day of October 29th). It is also undisputed that Plaintiff was the only temporary worker who was terminated on October 19th, the same day he made another

---

[2] As one court has noted, "[t]he <u>Silver</u> decision would appear to have been superseded by subsequent Ninth Circuit decisions that looked only to the reasonableness of the plaintiff's opposition." <u>Hanlon v. Chambers</u>, 464 S.E.2d 741, 754 n. 20 (W. Va. 1995).

ORDER - 11

complaint about Ms. Marangon. Although Defendants assert that Jim Dare had authorized Mr. Sparkman to terminate the two temporary workers on his crew on October 19th, it is undisputed that Plaintiff alone was terminated on October 19th, while Mr. Hicks worked until October 28th. As a result, there is evidence from which a reasonable fact-finder could infer a causal link between Plaintiff's protected activity and his termination on October 19th.

        B.    <u>Legitimate Non-Discriminatory Reason for Termination</u>

Defendants state that Plaintiff was terminated on October 19th because the "crack sealing program" had been completed. They also note that the initial request for Plaintiff's position (as well as for Mr. Hicks' position) was from August 11, 2004 to October 11, 2004.

        C.    <u>Pretext</u>

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that there is sufficient evidence to raise a triable issue of fact on whether Defendants' reason for Mr. McZeal's termination is pretextual. To be sure, SDOT's original request for the four temporary workers was from August 11 to October 11, 2004. However, it is undisputed that all four temporary workers were kept on after October 11th and that Plaintiff was the first one to be terminated. It is also undisputed that Plaintiff was terminated on October 19th, the same day he made another complaint about Ms. Marangon, while Mr. Hicks was retained until October 28th.

**Conclusion**

Consistent with the discussion above, Defendants' motion for summary judgment is GRANTED in part and DENIED in part. The motion is granted to the extent it seeks dismissal of: (1) all claims against Defendants Jerry Sparkman, Dick Stevenson, Bob Effrig, Jim Dare, and Melissa Marangon; and (2) any racial harassment/hostile work environment claims asserted in the amended complaint. The motion is denied to the extent it seeks dismissal of Plaintiff's claim that he was terminated from his employment on October 19, 2004 in retaliation for engaging in activity protected by Title VII. To the extent that Plaintiff's opposition brief may be construed as raising claims that his

ORDER - 12

later attempts to obtain work with the City were unlawfully denied, Plaintiff did not provide fair notice of such additional claims in his amended complaint. Absent a stipulation by the parties, Plaintiff will not be permitted to amend his complaint at this late stage of the proceedings to assert new claims.

The Clerk is directed to send copies of this order to all counsel of record..

Dated: November 9, 2006

s/Marsha J. Pechman
Marsha J. Pechman
United States District Judge

ORDER - 13